[DO NOT PUBLISH]

# In the
# United States Court of Appeals
# For the Eleventh Circuit

_____

No. 24-12098

Non-Argument Calendar

_____

BROOKE GOLDSTEIN,
In the Matter of W.S., B.S., and Z.S.,

                                                                               Petitioner-Appellant,

*versus*

MATTHEW SIMON,

                                                                               Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:24-cv-20633-CMA

_____

Before ROSENBAUM, LUCK, and BRASHER, Circuit Judges.

PER CURIAM:

This appeal arises under the Hague Convention on the Civil Aspects of International Child Abduction (Hague Convention), as implemented by the International Child Abduction Remedies Act (ICARA). *See* 22 U.S.C. § 9001, *et seq.* Brooke Goldstein, the mother, appeals the district court's order denying her petition to return her children to Israel. After careful review, we affirm.

**I.**

The parties are familiar with the facts of this case. We keep this section brief and address only those facts necessary to the discussion below.

Brooke Goldstein and Matthew Simon, the mother and father, have three children together. The first child was born in 2015, the second in 2017, and the third in 2020. All three children were born in New York, but the family often traveled domestically and internationally. Before 2020, the family lived in Brooklyn, the Hamptons, and Los Angeles. The family moved to Israel in December 2020, and halfway through 2021, the children became Israeli citizens and obtained Israeli passports.

During the next few years in Israel, the children visited doctors, were enrolled in schools, and participated in extracurricular activities. The children speak English, but not Hebrew. The family

went on vacation to Italy in October 2023, and during that time, Hamas attacked Israel. As a result, the family decided to move elsewhere because of the war. They settled in Miami where the children enrolled in school and participated in extracurricular activities. The children visited doctors and spent time with extended family in the area. For the 2024–2025 school year, the children are enrolled in schools in Miami and Israel.

In late 2023, the mother and father began to disagree about keeping the family in Miami versus returning to Israel. As a result, the mother filed an ICARA petition in federal district court seeking to require the father to return the children to Israel. The mother and father continued living together in Miami with their children when the mother filed her petition, alleging the father's wrongful retention.

After a four-day bench trial, the district court denied the petition. In doing so, it determined that the children's habitual residence was Florida. Alternatively, the district court concluded that, even if the children's habitual residence were in Israel, the father did not wrongfully retain the children or prevent the mother from taking them to Israel. The mother appealed.

## II.

The Hague Convention "address[es] 'the problem of international child abductions during domestic disputes.'" *Lozano v. Montoya Alvarez*, 572 U.S. 1, 4 (2014) (quoting *Abbott v. Abbott*, 560 U.S. 1, 8 (2010)). The treaty's "core premise" is that "'the interests of children . . . in matters relating to their custody' are best served

when custody decisions are made in the child's country of 'habitual residence.'" *Monasky v. Taglieri*, 589 U.S. 68, 72 (2020) (quoting Convention Preamble, Hague Convention, Oct. 25, 1980, T.I.A.S. No. 11670, S. Treaty Doc. No. 99–11 (Treaty Doc.), at 7). Congress passed ICARA, which implements the Hague Convention's requirements and allows a parent to file a petition for return of a child in state or federal court. 22 U.S.C. § 9003. The Hague Convention and ICARA settle the forum for a custody dispute, but neither authorizes a court to adjudicate the merits of a custody dispute. *Lops v. Lops*, 140 F.3d 927, 936 (11th Cir. 1998).

As a general rule, a parent that wrongfully retains or removes a child from her habitual residence must return the child. Art. 12, Treaty Doc., at 9. The Hague Convention makes an exception to this general return requirement if a return poses a "grave risk" of harm to a child. *Monasky*, 589 U.S. at 72 (quoting Art. 13, Treaty Doc., at 10). The party opposing the return has the burden of demonstrating the risk to the child. *Golan v. Saada*, 596 U.S. 666, 672 (2022).

"A child's habitual residence presents . . . a 'mixed question' of law and fact—albeit barely so." *Monasky*, 589 U.S. at 84 (quoting *U.S. Bank N.A. ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 396 (2018)). This review is considered "mixed" because we first review, under a *de novo* standard, whether the judge applied the correct legal standard to determine the habitual residence. *Id*. If the trial judge correctly applies the "totality of the

circumstances" standard to determine habitual residence, then we review the factual findings made by the court for clear error. *Id.*

Our review for clear error is highly deferential. This deference is overcome only when "'on the entire evidence' we are 'left with the definite and firm conviction that a mistake has been committed.'" *Seaman v. Peterson*, 766 F.3d 1252, 1261 (11th Cir. 2014) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985)).

### III.

The mother argues that the district court erred in denying her petition to return the children to Israel. First, she argues that Israel is the correct habitual residence of the children. Second, she argues that the father wrongfully retained the children by refusing to approve of their return to Israel. Third, she argues—even though the district court did not reach the issue—that the father failed to present sufficient evidence that the children would be in grave danger if returned to Israel. The father disagrees with the mother's contentions.

We will start, and end, with the first issue. The Hague Convention, as implemented by ICARA, applies to "Contracting States," which, here, are the United States and Israel. *See* 22 U.S.C. § 9001, *et seq.* So, even though the district court's determination was specific to Florida, we must determine whether the district court clearly erred in finding that the United States is the children's habitual residence. Because we conclude the district court did not

clearly err in finding the children's habitual residence to be in the United States, we need not address the other issues on appeal.

The district court correctly applied the totality of circumstances as the legal standard to determine habitual residence. This standard is a "fact-driven inquiry" depending on the "specific circumstances of the particular case." *Monasky*, 589 U.S. at 78. The only question is whether the district court clearly erred in any fact findings. The mother points to several fact findings that she says are clearly erroneous. We disagree.

First, the mother contends that the district court used an incorrect wrongful retention date in its habitual residence determination. Habitual residence is determined "at the time of removal or retention[.]" *Monasky*, 589 U.S. at 77. To establish this date, ICARA requires the mother to prove, by a preponderance of evidence, *when* the father wrongfully retained the children. *See Seaman*, 766 F.3d at 1257. The district court found that the mother neither alleged a specific date nor did she dispute the father's proposed date. Based on this finding, the district court determined that the date of the filed petition would serve as the date of wrongful retention. Although the record reflects a disagreement between the mother and father before the filed petition, we cannot say the district court clearly erred in its finding that, if the father wrongfully retained the children, he did so as of the date of the mother's petition.

Second, the mother argues that the district court disregarded the parties' shared intent (or lack thereof) when they

returned to the United States from Israel. Shared intent is not "dispositive[,]" *Monasky*, 589 U.S. at 78, and "it cannot alone transform the habitual residence." *Ruiz v. Tenorio*, 392 F.3d 1247, 1253 (11th Cir. 2004). Contrary to the mother's argument, the district court found that the parties shared an intention of staying in Florida until the war in Israel ended—or, at a minimum for six months to a year. Ample evidence in the record supports that intention, and the mother filed her petition during this period. Accordingly, we are not left with a "definite and firm conviction" that the court erred. *Anderson*, 470 U.S. at 573 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

Third, and relatedly, the mother contends that the children's habitual residence never changed from Israel. But we cannot say that the record compels that finding. The mother had to show, by a preponderance of evidence, that the children were "habitual resident[s] of [Israel] *immediately before* retention in the United States[.]" *Chafin v. Chafin*, 742 F.3d 934, at 938 (11th Cir. 2013) (emphasis added). To determine the children's habitual residence, the district court relied on "objective facts," *Ruiz*, 392 F.3d at 1255, like the children's enrollment in schools and extracurriculars in the United States. It also based its finding, in part, on the father's "credible testimony," to conclude that the children's residence was the United States at the time of the filed petition. When a district court makes determinations based on witness credibility, we give "even greater deference to the trial court's findings[.]" *Anderson*, 470 U.S. at 575. Being "sensitive to the unique circumstances of the case[,]" *Monasky*, 589 U.S. at 78 (quoting *Redmond v. Redmond*, 724 F.3d 729,

| 8 | Opinion of the Court | 24-12098 |

744 (7th Cir. 2013)), the district court also considered the family's transitory history—they had often moved to different cities, states, and countries for short periods of time—as relevant to whether the children had established a habitual residence in the United States. In light of the unique circumstances of this case, the district court determined that the mother did not meet her burden in demonstrating that Israel was the children's habitual residence at the time of the alleged retention, and we cannot say the district court committed clear error in making that determination.

Lastly, the mother challenges the district court's assessment of the children's acclimatization to the United States. "For older children capable of acclimating to their surroundings, courts have long recognized, facts indicating acclimatization will be highly relevant." *Monasky*, 589 U.S. at 78. And in cases of young children, "the intentions and circumstances of caregiving parents are relevant considerations." *Id.* Courts consider "academic activities," "social engagements," "meaningful connections with the people and places in the child's new country," "language proficiency," and "location of personal belongings." *Id.* at 78 n.3 (quoting Federal Judicial Center, J. Garbolino, The 1980 Hague Convention on the Civil Aspects of International Child Abduction: A Guide for Judges 67–68 (2d ed. 2015)).

Applying the *Monasky* factors, the district court considered, among other facts, the children's extracurricular activities, the location of their belongings, and their relationship with family in Florida. While the mother argues that the youngest child could not

have acclimated, we cannot say the district court erred in evaluating this evidence as to the children. Facts pertaining to the children's acclimatization to the United States are relevant to assess a child's habitual residence, and therefore, the district court did not clearly err in its consideration of them.

## IV.

The district court's judgment is **AFFIRMED.**